## People ex rel. Gale v. Supervisor of Onondaga.

*Title of Legislative Acts.*   Where, in the passage of an act by the Legislature, there is no error in the title, a subsequent clerical mistake in the title, as approved by the Governor, does not necessarily invalidate the act, if it be such as to show by comparison that no one could be misled by it.— *Const. Art. 4, §20.*

*Power of Townships to audit accounts.*   Where certain individuals raised money on their own credit for bounty purposes, with some expectation that the town authorities would assume it;' and a town meeting subsequently, without statutory authority, voted in favor of recognizing and paying it; *held*, that such action was invalid, as townships have no general power to adopt unauthorized liabilities, or to audit accounts by town meeting.

*Power of Legislature to audit private accounts.*   By an act of the Legislature— *Sess. Laws, 1867, vol. 2, p. 890*—it was enacted that a note recited to have been given for that purpose by individuals, was a legal debt against the township of Onondaga, and that the Supervisor be authorized and required to levy a tax, and issue his warrant for the collection of a sufficient sum to pay said note and interest; *held*, that such action, in effect, was equivalent to the auditing of a private claim, which the Legislature was forbidden to do by the Constitution.— *Const. Art. 4, §31.*

*Heard and decided November 2nd.*

Mandamus against the supervisor of Onondaga, Ingham County.

The petition set forth that "on the 19th of September, 1864, at an informal meeting of citizens and tax payers of said township, it was determined to raise by tax the sum

of two thousand dollars, as bounty money, for the purpose of filling the quota of soldiers for that town. 'That said meeting being informal, and it being necessary to ratify the proceedings by the proper township authorities, it was determined to raise said money by a temporary loan, and for that purpose a promissory note was drawn up and signed by said relator and by many other citizens, and that said note was executed in full reliance upon a future ratification by the proper authorities. That said note was negotiated, and the money raised and expended for the aforesaid purpose.

"That afterwards, at the annual township meeting in 1865, the electors of said town voted to raise a sufficient sum of money to pay said note, and that in pursuance thereof the supervisor of said town levied a tax for said purpose, and that a large part of the sum was collected; but that subsequently the township board directed the treasurer to refund such as had been collected for said purpose.

"That subsequently, by an act of the Legislature, approved March 25, 1867, a tax was directed to be levied for the purpose of paying said note; but that at the annual meeting of the electors of said town, subsequently held, the supervisor of said town was directed to disregard the provisions of said act and not to levy a tax therefor; and thereupon, though duly requested to levy said tax, he refused so to do.

The respondent showed cause and made the following points, based upon the facts stated in his sworn answer:

"1st. That the said promissory note was given in a private and individual capacity, and without any authority, either regular or irregular, of the said township of Onondaga, and therefore the act of 1865 did not empower the electors, by vote,. to authorize the payment of the sum by a tax.

"2d. That said note, never having become a legal charge against the said township of Onondaga, the Legislature could not make it a legal claim by itself allowing the account, and requiring the town to pay it without any previous judicial determination.

" 3d. It does not sufficiently appear to the court in what manner the money raised by the said promissory note was expended, nor by whom the sum was expended. For anything that appears, it may have been expended in whole or in part for substitutes, or used extravagantly, by the signers of the note, in payment of pretended expenses.

" 4th. That the said act[a] infringes the provisions of the constitution in this, that the object of the law does not in any way appear in its title, and also in that it violates section 31 of article 4 of the said constitution; that the recitals of the said act are all substantially untrue; that the said note was not given 'in accordance with the determination of an informal meeting of the said township of Onondaga'; that it was a meeting of individuals who did not assume to be a township meeting; that the said vote of the electors, taken in April, 1865, was not in conformity with Act No. 86 of that year, because there had been no previous action of the township in regard to the said note which could be ratified by a vote, and this deponent not only had not refused to issue his warrant as there recited, but had actually issued the same, and the tax was collected thereon."

(No. 425.)

[a] An Act authorizing and requiring the levying and collecting of a certain *county* tax in the township of Onondaga, in the county of Ingham.

*Whereas,* On the nineteenth day of September, eighteen hundred and sixty-four, fifty-nine of the electors and tax payers of the township of Onondaga, in the county of Ingham, gave a note for the purpose of raising money to pay bounties, for the sum of two thousand dollars; said note being given in accordance with the determination of an informal meeting of said township, that the money should be so raised and secured, until the first day of February, eighteen hundred and sixty-six, at which time it should be paid by the said township of Onondaga;

*And whereas,* On the third day of April, eighteen hundred and sixty-five, at the annual township meeting held in said township, and in conformity with act number eighty-six, of the session laws of eighteen hundred and sixty-five, the question of raising the money by tax upon said township was submitted to the electors, and by them decided in the affirmative;

*And whereas,* In pursuance of said vote the supervisor of said township levied the said tax in the assessment roll for the year eighteen hundred and sixty-five, but on account of his opposition to the said tax, neglected and refused to issue his warrant for the collection of the same, until compelled to do so by the board of supervisors of the county of Ingham, which occurred too late for the entire collection of the same.

*And whereas,* The whole of said tax not being collected within the life of the warrant, the township board ordered the township treasurer to refund

THE PEOPLE *v.* THE SUPERVISOR OF ONONDAGA.

The law in question was passed by both houses with a title authorizing the levying and collecting of a certain "*bounty* tax." In engrossing it after its passage, by a clerical error, the word "*county*" was substituted for "*bounty*," and the bill was submitted to and signed by the Governor, with this mistake in the entitling.

*J. W. Longyear,* for relator.

*A. Blair,* for respondent.

COOLEY J.

I am not prepared to say that an act of the Legislature can be valid which, as engrossed for the signature of the Governor, would be void if passed by the Legislature in that form. A law must have the concurrence of the three branches of the legislative department; and if it differs in an essential particular when presented to the Governor for his signature from the bill passed by the two houses, there is difficulty in saying that it has been concurred in by all.— *Prescott v. Trustees Illinois and Michigan Canal,* 19 *Ill.* 324. And under our constitution the title is not only important, but it is absolutely made to control; so that I do not see how any important change in the title can be said to be immaterial.

The principal difficulty with this statute, however, is that it assumes to audit and allow a private claim against the township. This is distinctly within the words of the constitutional prohibition, and I have no doubt within its

such sums as he had collected, to the parties paying the same; therefore,

SECTION 1. *The People of the State of Michigan enact,* That the said note given by James Justice, Wesley Vaughn, John C. Gale, and fifty-six others, be and the same hereby is a legal debt against the said township of Onondaga, in the county of Ingham; and the supervisor of said township is hereby authorized and required to levy a tax, and issue his warrant for the collection of a sum of money sufficient to pay said note of two thousand dollars, and the interest on the same, on the assessment roll of said township of Onondaga, for the year eighteen hundred and sixty-seven; and the same is hereby declared to be a legal and valid tax against the real and personal property of said township of Onondaga.

Approved March 25, 1867."

intention also.   The constitution meant to altogether pro-
hibit the Legislature from assuming to pass upon private
claims, and to compel their submission for adjustment to
the proper state, county and township boards, as much
more likely to ensure justice, besides saving the state the
great expense which must attend their determination by the
Legislature.   The wisdom of the provision is seen in the
present case, where the Legislature has assumed the state-
ments of the applicants for the special statute as undoubted
facts, and acted upon them as if proved, while the papers
before us show that in some very important particulars the
real facts were quite otherwise.   And as the constitution
plainly prohibits the legislature from auditing and allowing
*any* private claim, I do not think we are at liberty to fritter
away its effect by forced construction, and to say that after
all what was meant was only such private claims as are pre-
sented against the state.   The mischief to be guarded against
was all the greater when a claim was against a township,
having perhaps none of its citizens in the legislature to rep-
resent it, and whose complaints of injustice, if unfairly dealt .
by, could attract but little attention, than when presented
against the state at large, where every legislator to a certain
degree would be interested in scrutinizing it, and the people
of the whole state would be likely to make their complaints
heard in the case of any improper allowance.

CAMPBELL J.

   I am not disposed to regard the error in the title to the
statute as fatal.   We have certainly the right to look be-
hind the enrolment of a statute for some purposes, in order
to determine whether it passed the legislature under the
conditions required by the constitution, as, for example, to
ascertain what the vote was upon it. — *Green v. Graves,* 1
*Doug.* 351.   And when we find that, in the submission to
the legislature, there was no error in the title — inasmuch
as the provision of the constitution was mainly designed to

preserve them from being misled, we should not, I think, pay much attention to such a mere clerical error as suggests its own character at once on reading the bill, and appears to be a mistake of a single letter which can mislead no one who reads the act.

I further think, in accordance with the views of my brother Cooley that the clause of the constitution prohibiting the legislature from auditing or allowing private claims is applicable to this case. The legislature is debarred directly from exercising judicial powers, and were it not that there may be found a slight difference between the auditing of accounts and powers strictly judicial, there would have been no need of an express prohibition of this kind, as it is designed to meet the same class of mischiefs. The legislature can not, or at least does not use the same means for bringing in parties and obtaining testimony which are required to do justice in ordinary cases, and there is as much danger of improper influence and management concerning claims against lesser bodies as exists concerning claims against the state. I think the law is void on that account.

Leaving the preamble and finding out of view, there is nothing in the facts to sustain the right to have this tax collected. Assuming all that is claimed, it shows only that certain persons raised money on their own credit, with some expectation that the town would assume it, and a town meeting subsequently voted in favor of recognizing and paying it. But under the laws townships have no power to audit accounts by town meeting, and adopting the action would still leave it necessary to have the amount audited before it could become a fixed liability. Without some legal authority, a town meeting has no more power to audit accounts than the legislature, and there has been no such legislation.

I am very strongly inclined to think that these advances are not such as could be lawfully allowed to be ratified. Ratification can only be had where the original act was one

which purported or was designed to be one of agency. The money was not raised by town authority, and, so far as we can judge from the facts, was not expended, or designed to be expended, by the town authorities. While informal town action, or that which professes to be such, may be ratified by legislative permission, I think action which was not in any way under the formal or informal direction of the town or its authorities, can not, by any process, be made town action, and can not, therefore, become chargeable as such. It is essentially private, and must remain so.

The mandamus should be denied.

CHRISTIANCY J. agreed with CAMPBELL J. that the error in engrossing the title to this act, was of such a nature as to correct itself when the whole statute was inspected and that as the act, when passed, was correct, and it was impossible to mistake its purport, the clerical error should be disregarded in this case.

He also held that, as it was not clear upon the facts returned, some of which were disputed, that the debt had ever been legally adopted as a township obligation, there was no right to a mandamus until that should be made to appear (which could not be established by the finding of the Legislature); and as a majority of the court were of opinion that the writ should not issue at all, and as he agreed it could not be granted without further showing, he concurred in denying the application.

*Mandamus denied.*

MARTIN CH. J. did not sit.